## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 6:23-cv-163 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUSTAFA E. AL-SHAER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, the United States of America, complains and alleges as follows:

1.     The United States brings this action to collect civil penalties assessed against Defendant Mustafa E. Al-Shaer for his willful failure to timely report his financial interest in foreign bank accounts, as required under 31 U.S.C. § 5314 and its implementing regulations, for calendar years 2010-2012. The United States also seeks to collect accrued interest on such penalties, late payment penalties, and associated fees.

2.     This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and is brought at the direction of the United States Attorney General pursuant to 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C).

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1331, 1345, and 1355 because it arises under a federal statute, the United

States is the plaintiff, and the action seeks recovery of civil penalties.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(c)(1)

and 1395 because Al-Shaer resides in this district in Orlando, Florida.

## REGULATORY BACKGROUND REGARDING THE DUTY TO REPORT FOREIGN FINANCIAL ACCOUNTS

5.     Section 5314 of Title 31 of the U.S. Code authorizes the Secretary

of the Treasury to require United States citizens or residents to report certain

transactions with foreign financial agencies. Under the statute's implementing

regulations, "[e]ach person subject to the jurisdiction of the United

States…having a financial interest in, or signature or other authority over, a bank,

securities, or other financial account in a foreign country shall report such

relationship to the Commissioner of Internal Revenue for each year in which such

a relationship exists…." 31 C.F.R. § 103.24(a) (2010).

6.     Under 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350, all United States

persons who have a financial interest in, or signatory or other authority over, a

foreign financial account or accounts exceeding $10,000 at any time during a

calendar year are required to file an annual report disclosing the existence of each

account. To fulfill this reporting requirement during the years at issue, a United

States person needed to file a Form TD F 90-22.1 – *Report of Foreign Bank and Financial Accounts*. This form is commonly known as an "FBAR."

7.      An FBAR requires the taxpayer to disclose, among other things, the maximum value of each foreign account during the calendar year reported, the type of account, the name of the financial institution in which the account is held, the account number, and the mailing address of the financial institution in which the account is held. *See* Form TD F 90-22.1, 2012 edition (https://www.irs.gov/pub/irs-access/f90221_accessible.pdf) (permalink at https://perma.cc/G76M-NGJC).

8.      A "United States person" includes United States citizens and residents. *See* 31 C.F.R. § 1010.350(b)(1).

9.      For the years at issue, the FBAR for a given calendar year was due on or before June 30 of the following calendar year. 31 C.F.R. § 1010.306(c).

10.      Additionally, anyone who is required to file an income tax return and include a Form Schedule B – *Interest and Ordinary Dividends* is required to disclose a financial interest in, or signatory authority over, a foreign financial account or accounts on the Schedule B attached to their income tax return.

11.      Schedule B asks the taxpayer: "At any time during [tax year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial

account? See [page B-2] for exceptions and filing requirements for Form TD F 90.22-1." *See* Schedule B, Form 1040, 2010 edition (https://www.irs.gov/pub/irs-prior/f1040sb--2010.pdf) (permalink at https://perma.cc/N6E3-C6T7).

12.     Section 5321(a)(5) of Title 31 authorizes imposing civil penalties for willful failure to comply with the reporting requirements of § 5314. Specifically, 31 U.S.C. § 5321(a)(5)(C) provides for a maximum willful penalty equal to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

13.     An assessed penalty under 31 U.S.C. § 5321(a)(5)(C) is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

## AL-SHAER'S BACKGROUND

14.     Al-Shaer is a dual citizen of the United States and Saudi Arabia.

15.     Al-Shaer was born in Saudi Arabia.

16.     Before moving to the United States, Al-Shaer was a pilot for 25 years.

17.     Al-Shaer consulted Saudi airlines on the purchase and maintenance of private luxury aircraft, with a focus on refurbishing the interior of these aircraft.

18.     Al-Shaer earned income from investments in the Saudi Arabian business market.

19.     Al-Shaer collected rental income from shops he owned in Jeddah, Saudi Arabia, and a residential property in France.

20.     In 2006, Al-Shaer moved to the United States and became a permanent resident.

21.     In 2007, Al-Shaer formed in Florida a consulting business organized as an S-Corporation called SSBC, Inc. Al-Shaer is its Executive Advisor. SSBC now is inactive.

22.     Al-Shaer became a United States citizen in 2014.

## AL-SHAER'S FOREIGN FINANCIAL ACCOUNTS

23.     Between 2006 and 2012, Al-Shaer held an interest in at least eight financial accounts in banks in France, Saudi Arabia, and Switzerland.

24.     In late 2004 or early 2005, Al-Shaer opened an account at Swiss bank European Financial Group ("EFG").

25.     Al-Shaer's account at EFG was opened in the name of Panamanian entity MSEA Corp.

26.     MSEA Corp. was formed in Panama in early 2005, around the same time Al-Shaer opened his account with EFG. MSEA Corp.'s sole purpose was to hold title to Al-Shaer's account at EFG.

27.     Al-Shaer knew that his EFG account was being opened in the name of MSEA Corp.

28.     Al-Shaer's relationship manager at EFG moved to the Swiss bank Coutts & Co., Ltd. ("Coutts") in 2007, taking Al-Shaer's account with her.

29.     Al-Shaer opened an account with Coutts on or about October 29, 2007. The account number was xxxx7470.

30.     Al-Shaer's account at Coutts was held in the name of Panamanian entity Siena Administration S.A.

31.     Siena Administration S.A. was formed in Panama on or about September 4, 2007. Siena Administration's sole purpose was to hold title to Al-Shaer's account at Coutts.

32.     A Swiss financial services firm, Allied Finance Trust AG ("Allied Finance"), was a director of Siena Administration.

33.     Allied Finance managed Al-Shaer's account at Coutts nominally titled to Siena Administration.

34.     Both Al-Shaer and Allied Finance were authorized signatories on Al-Shaer's account at Coutts nominally titled to Siena Administration.

35.     Al-Shaer signed documents to open the account at Coutts on behalf of Siena Administration.

36.     Al-Shaer knew that his money was being transferred from EFG into a Coutts account nominally titled to Siena Administration.

37.     Al-Shaer either personally, or through directions to an intermediary, transferred money into and out of the Coutts account.

38.     For the year **2010**:

    a.     Al-Shaer timely filed an FBAR.

    b.     Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France in his timely filed FBAR.

    c.     Al-Shaer did not disclose an interest in the Coutts financial account in Switzerland in his timely filed FBAR.

    d.     Al-Shaer timely filed his U.S. Individual Income Tax Return (Form 1040).

    e.     Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France on the Schedule B attached to his timely filed Form 1040.

    f.     Al-Shaer did not disclose an interest in a financial account in Switzerland on the Schedule B attached to his timely filed Form 1040.

    g.     On or about March 18, 2015, Al-Shaer submitted an amended FBAR disclosing a financial interest in an account at Coutts Bank in Switzerland with a maximum balance of $2,487,800 in the year 2010.

h.     Al-Shaer's amended FBAR for the year 2010 also disclosed additional accounts at The National Commercial Bank and Saudi British Bank in Saudi Arabia.

39.    For the year **2011**:

a.     Al-Shaer timely filed an FBAR.

b.     Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France in his timely filed FBAR.

c.     Al-Shaer did not disclose an interest in the Coutts financial account in Switzerland in his timely filed FBAR.

d.     Al-Shaer timely filed his U.S. Individual Income Tax Return (Form 1040).

e.     Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France on the Schedule B attached to his timely filed Form 1040.

f.     Al-Shaer did not disclose an interest in a financial account in Switzerland on the Schedule B attached to his timely filed Form 1040.

g.     On or about March 18, 2015, Al-Shaer submitted an amended FBAR disclosing a financial interest in an account at

Coutts Bank in Switzerland with a maximum balance of $2,458,322 in the year 2011.

h.    Al-Shaer's amended FBAR for the year 2011 also disclosed additional accounts at The National Commercial Bank and Saudi British Bank in Saudi Arabia.

40.    For the year **2012**:

a.    Al-Shaer timely filed an FBAR.

b.    Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France in his timely filed FBAR.

c.    Al-Shaer did not disclose an interest in the Coutts financial account in Switzerland in his timely filed FBAR.

d.    Al-Shaer timely filed his U.S. Individual Income Tax Return (Form 1040).

e.    Al-Shaer disclosed an interest in financial accounts in Saudi Arabia and France on the Schedule B attached to his timely filed Form 1040.

f.    Al-Shaer did not disclose an interest in a financial account in Switzerland on the Schedule B attached to his timely filed Form 1040.

    g.     On or about March 18, 2015, Al-Shaer submitted an amended FBAR disclosing a financial interest in an account at Coutts Bank in Switzerland with a maximum balance of $2,318,634 in the year 2012.

    h.     Al-Shaer's amended FBAR for the year 2012 also disclosed additional accounts at The National Commercial Bank and Saudi British Bank in Saudi Arabia.

41. In 2010, Al-Shaer's Coutts' account represented over 90% of his total holdings in foreign financial accounts.

42. In 2010, the maximum value of Al-Shaer's Coutts' account was almost ten times the maximum value of all his other foreign financial accounts combined.

43. In 2011, Al-Shaer's Coutts' account represented over 89% of his total holdings in foreign financial accounts.

44. In 2011, the maximum value of Al-Shaer's Coutts' account was over eight times the maximum value of all his other foreign financial accounts combined.

45. In 2012, Al-Shaer's Coutts' account represented over 83% of his total holdings in foreign financial accounts.

46.    In 2012, the maximum value of Al-Shaer's Coutts' account was almost five times the maximum value of all his other foreign financial accounts combined.

## BACKGROUND OF COUTTS' ACTIVITIES

47.    Between August 1, 2008 and December 31, 2014, Coutts managed 1,337 accounts related to citizens or residents of the United States. *See* Joint Statement Between U.S. Department of Justice and the Swiss Federal Department of Finance dated August 29, 2013, Scope and Definitions, Definitions ¶ 6 (https://www.justice.gov/tax/file/631356/download) (permalink at https://perma.cc/EXB8-2Y8V); Coutts Non-Prosecution Agreement, Statement of Facts ¶¶ 1-3 (https://www.justice.gov/opa/file/801961/download) (permalink at https://perma.cc/9EDZ-6X2F).

48.    Coutts knew that American taxpayers "had a legal duty to report to the IRS and pay taxes on all of their income, including income earned in accounts that these U.S. taxpayers maintained at the Bank." Coutts Non-Prosecution Agreement, Statement of Facts, ¶ 13.

49.    When it opened and serviced accounts for American clients, Coutts "knew or had reason to know" that the taxpayers were likely not reporting their foreign accounts to the IRS. *Id.* ¶ 14.

50.    Relationship managers employed by Coutts "assisted or otherwise facilitated" structuring U.S. taxpayers' accounts in ways that would conceal their "ownership or beneficial interest" in the accounts. *Id.* ¶ 16.

51.    One of the ways Coutts' relationship managers helped American clients conceal their interest in accounts, and thereby evade their reporting and income tax obligations, was "by placing their assets in names of structures formed, maintained, and managed by various subsidiary trust companies of Coutts." *Id.* ¶ 20.

52.    Coutts' relationship managers, through the trust companies, created structures in offshore locations such as Panama, knowing that Swiss bank secrecy laws would conceal their American clients' ownership or beneficial interest in these accounts from U.S. authorities. *Id.*

53.    Coutts' relationship managers also "coordinated with external trust companies to create and administer offshore structures incorporated or based in offshore locations such as…Panama…for its U.S. clients." *Id.* ¶ 21.

54.    Coutts' relationship managers knew that their U.S. clients were the true beneficial owners of these accounts and the structures used to manage them. *Id.* ¶ 22.

55.    Coutts' relationship managers and other employees "knowingly accepted and included" documents in their accounting records "provided by the

directors of the offshore companies that falsely represented under penalty of perjury that such companies were the beneficial owners…of the assets in the Coutts accounts." *Id.* ¶ 22.

56.    Coutts' relationship managers and employees "aided and assisted the U.S. clients in concealing these assets and income from the IRS." *Id.* ¶ 22.

57.    Coutts also facilitated the transfer of accounts held by U.S. taxpayers from other Swiss banks "while knowing or having reason to know that a portion of the accounts…likely were undeclared." *Id.* ¶ 27.

58.    Coutts offered banking services "which it knew could assist and did in certain cases in fact assist U.S. clients in the concealment of assets and income from the IRS." *Id.* ¶ 28.

## AL-SHAER WILLFULLY FAILED TO TIMELY REPORT HIS INTEREST IN A FOREIGN FINANCIAL ACCOUNT

59.    For the years 2010 through 2012, Al-Shaer was required to file an FBAR reporting his interest in all foreign financial accounts by June 30th of the following year.

60.    Al-Shaer timely filed FBARs for the years 2010 through 2012.

61.    Al-Shaer disclosed interests in financial accounts in Saudi Arabia and France on his timely filed FBARs for the years 2010 through 2012.

62.    Al-Shaer did not disclose his interest in the Coutts account on his timely filed FBARs for the years 2010 through 2012.

13

63.     Al-Shaer knew of his obligation to disclose his interest in the Coutts account on his timely filed FBARs for the years 2010 through 2012.

64.     Al-Shaer recklessly avoided learning of the requirement to report his interest in the Coutts account on his FBARs for the years 2010 through 2012.

65.     For the years 2010 through 2012, Al-Shaer was required to file a Schedule B attached to his Form 1040 return due to his beneficial interest in foreign financial accounts.

66.     For the years 2010 through 2012, Al-Shaer timely filed his original Forms 1040 with Schedule Bs.

67.     For the years 2010 through 2012, Al-Shaer reported his beneficial interest in foreign accounts in Saudi Arabia and France on his original Schedule Bs.

68.     For the years 2010 through 2012, Al-Shaer failed to report his beneficial interest in a Swiss account on his original Schedule Bs.

69.     Al-Shaer knew, or should have known, of his obligation to report his interest in a Swiss account on his original Schedule Bs.

70.     Al-Shaer's failure to report the Coutts account on his timely filed FBARs for 2010 through 2012 was willful.

## ACTIONS TO ENFORCE AL-SHAER'S WILLFUL FAILURE TO COMPLY WITH FBAR REPORTING REQUIREMENTS

71.    In June 2014, Al-Shaer applied to enter the IRS's 2012 Offshore Voluntary Disclosure Program (OVDP).

72.    OVDP was an initiative that allowed U.S. taxpayers with undisclosed interests in foreign financial accounts to avoid criminal prosecution and "resolve income tax liabilities…[with] a uniform civil penalty structure" if they voluntarily disclosed their noncompliance with IRS reporting requirements. *See* Internal Revenue Manual 4.63.3.1.

73.    In March 2015, Al-Shaer submitted a Form 14654 – *Certification by U.S. Person Residing in the United States for Streamlined Domestic Offshore Procedures*, requesting a reduced five percent penalty for failing to timely report his Coutts account (known as "transition treatment").

74.    In December 2015, Al-Shaer was informed by the IRS that his request for transition treatment was denied.

75.    Al-Shaer subsequently withdrew from the 2012 OVDP.

76.    Al-Shaer, through his counsel of record, consented to extend the statute of limitations for assessment of the FBAR penalties for tax years 2010 through 2012 until June 30, 2021.

77.     On February 16, 2021, Al-Shaer was assessed penalties for willfully failing to disclose his Coutts account on his timely filed FBARs for tax years 2010 through 2012.

78.     On February 16, 2021, a delegate of the Secretary of the Treasury gave Al-Shaer notice of the penalties and demanded payment. Al-Shaer has failed to pay the penalties assessed against him.

79.     As of January 13, 2023, the total amount of Al-Shaer's penalties for tax years 2010 through 2012 is $1,245,191.06, including interest and assessed penalty fees.

## COUNT I – Reduce 2010 FBAR Penalty to Judgment

80.     The United States incorporates the allegations of paragraphs 1-4, 14-38, and 47-70, above.

81.     In 2010, Al-Shaer held a financial interest in and signature authority over an account at Coutts, a Swiss bank, with an aggregate balance of over $10,000.

82.     Al-Shaer was required to file an FBAR for 2010 reporting his interest in all foreign financial accounts by June 30, 2011.

83.     Al-Shaer timely filed an FBAR for 2010 but did not disclose his interest in the Coutts account on his timely filed FBAR for 2010.

84.     Al-Shaer knew of his obligation to disclose his interest in the Coutts account on his timely filed FBAR for 2010.

85.     Al-Shaer recklessly avoided learning of the requirement to report his interest in the Coutts account on his FBAR for 2010.

86.     Al-Shaer's failure to report the Coutts account on his timely filed FBAR for 2010 was willful.

87.     On February 16, 2021, a delegate of the Secretary of the Treasury, under 31 U.S.C. § 5321, timely assessed against Al-Shaer a total penalty of $504,904 for his willful failure to report his financial interest in the Coutts account on his original FBAR for 2010 and gave Al-Shaer notice and demanded payment of the assessment.

88.     Despite the notice and demand for payment, Al-Shaer failed to pay the penalties assessed against him. As a result, he owes $504,904 for his willful failure to satisfy the FBAR reporting requirements for 2010, plus interest and failure to pay penalty under 31 U.S.C. § 3717, and associated fees. Interest and statutory additions continue to accrue.

## COUNT II – Reduce 2011 FBAR Penalty to Judgment

89.     The United States incorporates the allegations of paragraphs 1-4, 14-37, 39, and 47-70, above.

90.     In 2011, Al-Shaer held a financial interest in and signature authority over an account at Coutts, a Swiss bank, with an aggregate balance of over $10,000.

91.     Al-Shaer was required to file an FBAR for 2011 reporting his interest in all foreign financial accounts by June 30, 2012.

92.     Al-Shaer timely filed an FBAR for 2011 but did not disclose his interest in the Coutts account on his timely filed FBAR for 2011.

93.     Al-Shaer knew of his obligation to disclose his interest in the Coutts account on his timely filed FBAR for 2011.

94.     Al-Shaer recklessly avoided learning of the requirement to report his interest in the Coutts account on his FBAR for 2011.

95.     Al-Shaer's failure to report the Coutts account on his timely filed FBAR for 2011 was willful. On February 16, 2021, a delegate of the Secretary of the Treasury, under 31 U.S.C. § 5321, timely assessed against Al-Shaer a total penalty of $504,904 for his willful failure to report his financial interest in the Coutts account on his original FBAR for 2011 and gave Al-Shaer notice and demanded payment of the assessment.

96.     Despite the notice and demand for payment, Al-Shaer failed to pay the penalties assessed against him. As a result, he owes $504,904 for his willful failure to satisfy the FBAR reporting requirements for 2011, plus interest and

failure to pay penalty under 31 U.S.C. § 3717, and associated fees. Interest and statutory additions continue to accrue.

## COUNT III – Reduce 2012 FBAR Penalty to Judgment

97.     The United States incorporates the allegations of paragraphs 1-4, 14-37, 40, and 47-70, above.

98.     In 2012, Al-Shaer held a financial interest in and signature authority over an account at Coutts, a Swiss bank, with an aggregate balance of over $10,000.

99.     Al-Shaer was required to file an FBAR for 2012 reporting his interest in all foreign financial accounts by June 30, 2013.

100.    Al-Shaer timely filed an FBAR for 2012 but did not disclose his interest in the Coutts account on his timely filed FBAR for 2012.

101.    Al-Shaer knew of his obligation to disclose his interest in the Coutts account on his timely filed FBAR for 2012.

102.    Al-Shaer recklessly avoided learning of the requirement to report his interest in the Coutts account on his FBAR for 2012.

103.    Al-Shaer's failure to report the Coutts account on his timely filed FBAR for 2012 was willful.

104.    On February 16, 2021, a delegate of the Secretary of the Treasury, under 31 U.S.C. § 5321, timely assessed against Al-Shaer a total penalty of

19

$100,000 for his willful failure to report his financial interest in the Coutts account on his original FBAR for 2012 and gave Al-Shaer notice and demanded payment of the assessment.

105.   Despite the notice and demand for payment, Al-Shaer failed to pay the penalties assessed against him. As a result, he owes $100,000 for his willful failure to satisfy the FBAR reporting requirements for 2012, plus interest and failure to pay penalty under 31 U.S.C. § 3717, and associated fees. Interest and statutory additions continue to accrue.

WHEREFORE, the United States of America respectfully requests that this Court grant the following relief:

A. Enter judgment against Defendant Mustafa E. Al-Shaer and in favor of the United States as to Counts I through III in the amount of $1,245,191.06, as of January 13, 2023, for the willful FBAR penalties assessed against him for tax years 2010 through 2012 under 31 U.S.C. § 5321(a)(5) and the late payment penalties assessed against him pursuant to 31 U.S.C. § 3717(e)(2), including further interest and statutory additions thereon as allowed by law to the date of payment; and

B. Award the United States its costs incurred in connection with this

action, along with such other relief as justice requires.

Dated:          January 30, 2023

Respectfully Submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

By: */s/ Andrew J. Weisberg*
ANDREW J. WEISBERG
NY Bar No. 5616321
U.S. Department of Justice
Trial Attorney, Tax Division
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3884
Fax: (202) 514-4963
Andrew.J.Weisberg@usdoj.gov


*Of Counsel:*

ROGER B. HANDBERG
United States Attorney
Middle District of Florida

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rules 1.08(a) and 1.08(b), that this document has been typed using 14-point Times New Roman font and is double-spaced with one-inch margins.

<u>*/s/ Andrew J. Weisberg*</u>
ANDREW J. WEISBERG
Trial Attorney
U.S. Dept. of Justice, Tax Division